Jacqueline R. HARRELL; Michael Harrell, Plaintiffs–Appellants,

v.

20TH CENTURY INSURANCE COMPANY, et al., Defendant,

and

Bradley Scott, Defendant–Appellee.

No. 89–56261.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 1991.

Decided May 23, 1991.

**204**

Federico Sayre and Raymond P. Boucher, Sayre, Moreno, Purcell & Boucher, Los Angeles, Cal., for plaintiffs-appellants.

Thomas M. Jimbo, Richards, Watson & Gershon, Los Angeles, Cal., for defendant-appellee.

Before GOODWIN, HUG and FARRIS, Circuit Judges.

HUG, Circuit Judge:

Jacqueline and Michael Harrell appeal the district court's dismissal with prejudice of their pendent state-law claims for fraud, breach of the implied covenant of good faith and fair dealing, and civil conspiracy. The Harrells contend the district court abused its discretion by not remanding these claims to state court after dismissing the Harrells' claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1962), and that the court erred by dismissing the state claims as time-barred under the applicable California statutes of limitation. We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTS AND PROCEEDINGS

On November 26, 1986, the Harrells filed an action in California state court alleging nine causes of action; four RICO counts, and one count each under state law for fraud, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, negligent infliction of emotional distress, and civil conspiracy. The complaint alleged a series of fraudulent activities on the part of the defendants arising out of the sale of Empire Auto Body, Inc. ("Empire"), an automobile repair business purchased by the Harrells. In particular, the complaint alleged that the Harrells were deceived into purchasing Empire based on the defendants' fraudulent promises that Empire would continue to receive automobile repair referrals from 20th Century Insurance Company ("20th Century"). According to the Harrells, once their purchase of Empire was consummated, they were deprived of these referrals, resulting in a decline in their business that ultimately led to Empire's bankruptcy.

Defendant Bradley Scott removed the case under 28 U.S.C. § 1441(a) (1988) to federal district court based on the court's original jurisdiction over the four RICO counts and its pendent jurisdiction over the five state-law claims. After dismissal of the four RICO claims, the Harrells moved for a remand of the state claims to state court. The district court denied the motion and dismissed all of the counts of the complaint with prejudice. This appeal followed.

## II. DISCUSSION

### A. *Pendent Jurisdiction*

The Harrells contend the district court abused its discretion by retaining jurisdiction over their pendent state claims rather than remanding them to state court. We disagree.

It is well settled " 'that a federal court does have the power to hear claims that would not be independently removable even after the basis for removal jurisdiction is dropped from the proceedings.' " *Swett v. Schenk*, 792 F.2d 1447, 1450 (9th Cir.1986) (quoting *Watkins v. Grover*, 508 F.2d 920, 921 (9th Cir.1974); *Murphy v. Kodz*, 351 F.2d 163, 167 (9th Cir.1965)). "The district court's decision whether to adjudicate pendent state claims following final disposition of all federal claims is reviewed for abuse of discretion." *Nishimoto v. Federman–Bachrach & Assoc.*, 903 F.2d 709, 712 (9th Cir.1990) (citations omitted). It is generally within a district court's discretion either to retain jurisdiction to adjudicate the pendent state claims or to remand them to state court. *See Price v. PSA, Inc.*, 829 F.2d 871, 876 (9th Cir.1987), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988); *Survival Systems v. U.S. District Court*, 825 F.2d 1416, 1419 (9th Cir.1987), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 861 (1988).

In this case, the Harrells do not dispute the district court's power to adjudicate their state claims. Instead, they contend the court erred by failing to exercise its discretion to remand the claims to state court. We find the Harrells' reliance on *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), however, to be misplaced. In *Carnegie–Mellon*, the Court, in a reaffirmance of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), held that a district court has discretion to remand a properly removed case to state court when none of the federal claims are remaining, "upon a proper determination that retaining jurisdiction over the case would be inappropriate." 484 U.S. at 357, 108 S.Ct. at 622. It is true that the Court in *Carnegie–Mellon* indicated its disapproval of a district court's retention of jurisdiction to adjudicate a statute of limitation issue (as in this case), *see id.* at 352–53 n. 10, 108 S.Ct. at 620 n. 10, and also noted that "in the usual case" the balance of factors will weigh toward remanding any remaining pendent state claims to state court. *See id.* at 350 n. 7, 108 S.Ct. at 619 n. 7. The Court also emphasized, however, that under *Gibbs*, the district court's decision to remand remains discretionary and is dependent upon what "will best accommodate the values of economy, convenience, fairness, and comity...." *Id.* at 351, 108 S.Ct. at 619.

While we recognize, as did the Court in *Carnegie–Mellon*, that it is generally preferable for a district court to remand remaining pendent claims to state court, we nevertheless conclude that the district court's retention of jurisdiction over the Harrells' state-law claims in this case was within its discretion. The Harrells filed their federal RICO claims initially in state court, and then only stipulated to their dismissal after the entire action was removed to federal court. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1196 (9th Cir.1988) (noting that a plaintiff is the master of his complaint and should not assert a parallel federal right if he desires to remain in state court). Moreover, the statute of limitations issues were fully briefed before the district court in Scott's motion to dismiss. The Harrells, however, failed to address these issues in their response to the motion.[1] As a result, we are

---

1. We reject Scott's argument that the Harrells' failure to address the statute of limitations issues in their response to the motion to dismiss constitutes a waiver of their right to raise these issues on appeal. Unlike the situation where appellate review is generally precluded when issues are raised in this court for the first time, see, e.g., *Wind Power Systems, Inc. v. Cannon Fin. Group, Inc. (In re Wind Power Systems, Inc.)*, 841 F.2d 288, 290 n. 1 (9th Cir.1988), the statute of limitations issues were raised and thoroughly briefed by Scott before the district court. Cases relied on by Scott where issues were never brought before the district court are

convinced that the interests of "economy, convenience, fairness and comity" identified in *Carnegie–Mellon* indicate that the district court properly exercised its discretion to retain jurisdiction over the state-law claims in this case.

### B. *Adjudication of Pendent State Claims*

The Harrells also contend the district court erred by granting Scott's motion to dismiss their complaint with prejudice on statute of limitations grounds.[2]

A dismissal pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim is reviewed *de novo*. *Wilshire Westwood Assocs. v. Atlantic Richfield Corp.*, 881 F.2d 801, 803 (9th Cir.1989). The district court's interpretation of the law of the state in which it sits is also reviewed *de novo*. *Emrich*, 846 F.2d at 1198. "When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980) (citation omitted).

### 1. *Fraud Claim*

■ The Harrells first contend the district court erred in dismissing their fifth cause of action for fraud as barred under the applicable three-year statute of limitation set forth in California Code of Civil Procedure § 338(d). In relevant part, section 338(d) provides that a "cause of action ... [for fraud] is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud...." Cal.Civ.Proc.Code § 338(d) (West Supp.1991). This court has noted that

[u]nder the California statute of limitations for fraud, the three-year period does not begin to run until the plaintiff has actual or constructive notice of the facts constituting the fraud. Constructive notice is knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry.

*Jablon*, 614 F.2d at 682 (citation omitted).

The Harrells filed their complaint in state court on November 26, 1986. Thus, if the Harrells had actual or constructive notice of the alleged fraud prior to November 26, 1983, their claim would be time-barred under section 338(d). The Harrells maintain they did not discover the alleged fraudulent scheme until on or about December 22, 1983, the same day they filed for bankruptcy under Chapter 11 of the Bankruptcy Code. We find this assertion unpersuasive.

The Harrells' complaint alleges that, in March 1983, 20th Century began to decrease steadily the amount and quality of business it referred to Empire despite numerous assurances that these referrals would be maintained. The complaint further alleges that by April 1983, this decline in referrals had decreased Empire's monthly volume of business by over $50,000. By May 1983, it is alleged that business from 20th Century had dropped from $150,000 to $70,000 per month, and that by July 1983 business had dropped over $100,000, with the average repair order reduced from $1,500 to less than $300. According to the complaint, these reductions occurred in the midst of fraudulent assurances from 20th Century and Scott that increased referrals would resume, but at the same time that 20th Century was advising its adjusters to not refer any business to Empire.

These allegations lead us to conclude that the Harrells had constructive if not actual notice of the alleged fraudulent

---

therefore properly distinguishable. *See Romain v. Shear*, 799 F.2d 1416, 1419 (9th Cir.1986) (per curiam), *cert. denied*, 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 840 (1987); *Roberts v. Berry*, 541 F.2d 607, 610 (6th Cir.1976); *Babb v. Schmidt*, 496 F.2d 957, 960 (9th Cir.1974); *Roberson v. United States*, 382 F.2d 714, 717–18 (9th Cir.1967).

2. The Harrells failed to address in their appellate brief the district court's dismissal of their claims for intentional and negligent infliction of emotional distress. We therefore consider any appeal of these claims to be abandoned. *See Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir.1988).

scheme by July 1983 at the latest. We therefore reject the Harrells' assertion that they were neither aware nor should have been aware of the fraud until December 22, 1983, the day they were ultimately forced to file for bankruptcy.

Thus, viewed with liberality, the allegations in the complaint would not allow the Harrells to prove that the statute was tolled to December 22, 1983. *See Jablon,* 614 F.2d at 682. Instead, we are convinced that here, as in *Jablon,* "a reasonably prudent person" would have become aware or at least suspicious of the alleged fraud by July 1983.

### 2. Claim for Breach of the Duty of Good Faith and Fair Dealing

■ The Harrells next contend the district court erred by dismissing their sixth cause of action for breach of the implied covenant of good faith and fair dealing. We conclude that the four-year limitations period set forth in California Code of Civil Procedure, section 337(1) is applicable to this cause of action.

Section 337(1)'s four-year period applies to "[a]n action upon any contract, obligation or liability founded upon an instrument in writing ...," whereas the two-year period relied on by Scott set forth in section 339(1) of the California Code of Civil Procedure applies to

[a]n action upon a contract, obligation or liability not founded upon an instrument of writing ... or an action founded upon a contract, obligation or liability, evidenced by a certificate, or abstract or guaranty of title of real property, or by a policy of title insurance; provided, that the cause of action upon a contract, obligation or liability evidenced by a certificate, or abstract or guaranty of title of real property or policy of title insurance shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder.

Cal.Civ.Proc.Code §§ 337(1); 339(1) (West 1982 & Supp.1991).

This court has previously held that, in the absence of a definitive ruling from the California courts, the California Supreme Court would most likely adopt section 339(1)'s two-year limitations period to a claim for breach of the covenant of good faith and fair dealing. *Eisenberg v. Insurance Co. of N.Am.,* 815 F.2d 1285, 1291–92 (9th Cir.1987). *See Martinez v. Asarco, Inc.,* 918 F.2d 1467, 1473 (9th Cir.1990) (per curiam) (rejecting two Arizona intermediate appellate court decisions upon showing that state supreme court would hold otherwise); *Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1482–83 (9th Cir.1986) (applying same approach to interpretation of California cases), *modified,* 810 F.2d 1517 (1987). In *Eisenberg,* we explained that a breach of the covenant of good faith and fair dealing was an "unusual tort action" properly within the scope of section 339(1) because its "hybrid" nature "sounds in tort or contract depending upon the facts of the case." 815 F.2d at 1292.

Subsequent to our decision in *Eisenberg,* however, the California Supreme Court held that a breach of the implied covenant of good faith and fair dealing in employment contracts presented a purely contractual claim precluding any tort remedies. *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 700–01, 765 P.2d 373, 401, 254 Cal. Rptr. 211, 239–40 (1988). Thus, in applying California law, we apply the California Supreme Court's decision in *Foley,* rather than the prior California law applied by this court in *Eisenberg. See Mundy v. Household Finance Corp.,* 885 F.2d 542, 544 & n. 1 (9th Cir.1989). We have since acknowledged, in applying *Foley* to a commercial contract claim outside the employment realm, that "California recognizes such torts only in the context of insurance contracts and other contracts where there is a 'special relationship' between the parties to the contract, characterized by elements of public interest, adhesion, and fiduciary responsibility." *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1092 (9th Cir.1989) (citing *Foley,* 47 Cal.3d at 687–88, 254 Cal.Rptr. at 230, 765 P.2d at 392 (citing *Seaman's Direct Buying Serv. v. Standard Oil Co.,* 36 Cal.3d 752, 768–69, 206 Cal.Rptr. 354, 362–63, 686 P.2d 1158, 1167 (1984))). Because *Foley* has been held to have "full retroac-

tive effect," *Newman v. Emerson Radio Corp.*, 48 Cal.3d 973, 993, 772 P.2d 1059, 1072, 258 Cal.Rptr. 592, 605 (1989), it is applicable to this case.

We conclude, as we did in *Payday*, that the allegations in the complaint supporting the Harrells' claim for breach of the implied covenant of good faith and fair dealing fail to demonstrate this required "special relationship" under California law. The complaint reveals a dispute arising from an alleged breach of a standard commercial contract for the sale of a business. We find no indication of such unequal bargaining power that would give rise to an element of adhesion. There are no fiduciaries involved, and the contract does not give rise to the type of public policy concerns present, for example in insurance contracts, that would justify allowing additional tort remedies under *Foley*.

■ We therefore hold that the Harrells' claim for breach of the implied covenant of good faith and fair dealing presents a contract claim subject to the four-year statute of limitation applicable to written contracts set forth in California Code of Civil Procedure § 337(1).[3] *See Mundy*, 885 F.2d at 544 ("California law implies a covenant of good faith and fair dealing in every contract.") (citing *Seaman's*, 36 Cal.3d at 768, 206 Cal.Rptr. at 362, 686 P.2d at 768). The complaint appears to allege, albeit vaguely, that Empire was purchased by the Harrells sometime in March 1983. It is undisputed that the Harrells filed their complaint in state court on November 26, 1986. The Harrells' claim for breach of the covenant consequently falls within section 337(1)'s four-year limitations period.

*3.* We are also unpersuaded by Scott's alternative argument that the district court's dismissal of the breach of the covenant claim should be upheld on the grounds that the complaint failed to allege that Scott was a party to the contract as required under California law. *See, e.g., Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 824, 620 P.2d 141, 149, 169 Cal.Rptr. 691, 699 (1979) (defendants must be parties to the insurance contract to be subject to liability under the implied covenant of good faith and fair dealing), *cert. denied*, 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980). It is true that the

### 3. Civil Conspiracy Claim

■ Finally, the complaint asserts a claim that the defendants conspired to defraud them into purchasing Empire. Under California law, "it is well settled that 'there is *no separate tort* of civil conspiracy, and there is *no civil action* for conspiracy to commit a recognized tort unless the *wrongful act* itself is committed and damage results therefrom.' " *Kerr v. Rose*, 216 Cal.App.3d 1551, 1564, 265 Cal. Rptr. 597, 604 (1990) (quoting 5 Witkin, *Summary of California Law* (9th ed. 1988) Torts, § 44, p. 107) (emphasis in original) (other citation omitted). Instead, "the major significance of the conspiracy [action] lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity." *Doctors' Co. v. Superior Court*, 49 Cal.3d 39, 44, 775 P.2d 508, 510–11, 260 Cal.Rptr. 183, 186 (1989) (citations omitted).

We have previously concluded that the Harrells' fraud claim is barred by the applicable three-year California statute of limitation. Therefore, because the Harrells' underlying tort cause of action for fraud does not constitute an actionable claim, we hold that the civil conspiracy claim also must fail. *See Zumbrun v. University of S. California*, 25 Cal.App.3d 1, 12, 101 Cal.Rptr. 499, 506 (1972) ("pleaded facts must show something which, without the conspiracy, would give rise to a cause of action").

### III. CONCLUSION

The district court's dismissals of the Harrells' fifth cause of action for fraud and

complaint fails to allege specifically that the parties entered into a contract for the purchase of Empire. Although vague, portions of the complaint do indicate, however, that such a contract existed and that Scott was a party to it. For example, the introduction to the complaint alleges that Scott was one of the defendants who owned and operated Empire. Thus, viewing the complaint with the required liberality, we conclude the Harrells have alleged sufficient facts to preclude dismissal under Fed.R.Civ.P. 12(b)(6) on this ground.

ninth cause of action for civil conspiracy are affirmed. The district court's dismissal of the sixth cause of action for breach of the implied covenant of good faith and fair dealing is reversed and remanded for further proceedings.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED FOR FURTHER PROCEEDINGS.